642 So.2d 1135 (1994)
CITY OF RIVIERA BEACH and Larry Kersey, Appellants,
v.
Michael A. BARFIELD, Appellee.
No. 93-2315.
District Court of Appeal of Florida, Fourth District.
September 21, 1994.
Andrew DeGraffenreidt, III, City of Riviera Beach, Riviera Beach, for appellants.
James K. Green of James K. Green, P.A., West Palm Beach, for appellee.
STEVENSON, Judge.
This is an appeal from a writ of mandamus entered by the trial court compelling the City of Riviera Beach to produce certain records pursuant to a request under Florida's Public Records Act. We reverse in part and affirm in part.
The salient facts are not in dispute. Willie Walker, a City of Riviera Beach police officer, was involved in a shooting which took place in the City of West Palm Beach. While the City of West Palm Beach was investigating the incident, copies of its criminal investigation records were supplied to the City of Riviera Beach for use in an administrative internal affairs investigation of Officer Walker. While West Palm Beach's criminal investigation was still active, Michael Barfield telephoned the City of Riviera Beach Police Department and spoke with Lieutenant Larry Kersey, the custodian of the records for the department's Internal Affairs Division. Barfield requested an appointment to inspect the records which West Palm Beach gave to Riviera Beach regarding the Willie Walker shooting incident. Lieutenant Kersey and the City of Riviera Beach refused to permit inspection of the records. Barfield petitioned the trial court for a writ of mandamus to compel disclosure of the records. The trial court granted the writ and this appeal followed.
*1136 We are presented with the question of whether active police criminal investigative records maintain their exempt status under the Florida Public Records Act when the records are shared with another criminal justice agency during the pendency of the investigation. We answer the question affirmatively and conclude that such records retain their protected status and are exempt from court ordered public disclosure.
Barfield argues that once the City of West Palm Beach shared its active "criminal investigative information" with the City of Riviera Beach the exemption provided by Section 119.07 was waived or otherwise ceased to exist. In support of his position, Barfield relied below on a statement from the Government-In-The-Sunshine Manual, Section (E)(1)(b) (1993), in which the Attorney General opined that once a record is transferred from one public agency to another, the record loses its exempt status. The Government-In-The-Sunshine Manual is a booklet prepared by the Office of the Attorney General, intended to serve as a reference guide for public officials and the media in interpreting the so-called sunshine laws, Chapters 286 and 119, Florida Statutes. As authority, the manual cited two earlier attorney general's opinions, AGO 89-12 and 85-62[1]. It is apparently upon this authority that the trial court based its final judgment, stating:
In the hands of the Defendant City, the records were not `criminal investigative information' but information pertaining to a purely administrative investigation which was subject to disclosure. When a criminal justice agency transfers criminal investigative information to another criminal justice agency, that information maintains its section 119.07(3)(d) exempt status only if the transferee agency is assisting in the criminal investigation or actively using the information for criminal intelligence purposes.
The general purpose of the Florida Public Records Act is to open public records so that Florida's citizens can discover the actions of their government. Browning v. Walton, 351 So.2d 380, 381 (Fla. 4th DCA 1977). Further, Section 119.01(1), Florida Statutes (1993), expressly provides that "it is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." Given this underlying policy, the Act is to be construed liberally in favor of openness, and all exemptions from disclosure are to be construed narrowly and limited to their designated purpose. See Tribune Co. v. Public Records, 493 So.2d 480, 483 (Fla. 2d DCA 1986).
Although Florida maintains a strong public policy in favor of open government, the critical importance of preserving the confidentiality of police records surrounding and compiled during an active criminal investigation remains of significant concern. Thus, the Legislature has provided exceptions to the general Public Records Act for "active criminal intelligence information" and "active criminal investigative information," as defined in section 119.011, Florida Statutes (1993).[2]
All parties agreed that the records compiled by the City of West Palm Beach were criminal investigative information and that *1137 the investigation was active. The parties also agreed that (1) the records were not exempt from disclosure by virtue of Riviera Beach's administrative internal affairs investigation and (2) Riviera Beach was not assisting West Palm Beach in the criminal investigation (the crime was committed outside of Riviera Beach's jurisdiction). In this appeal, the dispute between the parties centers on the effect of West Palm Beach sharing its active criminal investigative information with Riviera Beach.
This court declines to accept the Attorney General's view (which is supported by no additional authority) as persuasive in this matter. We conclude that when a criminal justice agency transfers protected information to another criminal justice agency, the information retains its exempt status. We believe that such a conclusion fosters the underlying purpose of section 119.07(3)(d), which is to prevent premature public disclosure of criminal investigative information since disclosure could impede an ongoing investigation or allow a suspect to avoid apprehension or escape detection. Tribune Co. v. Cannella, 438 So.2d 516, 523 (Fla. 2d DCA 1983), rev'd. on other grounds, 458 So.2d 1075 (Fla. 1984), appeal dismissed, 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985). In determining whether or not to compel disclosure of active criminal investigative or intelligence information, the primary focus must be on the statutory classification of the information sought rather than upon in whose hands the information rests. Had the legislature intended the exemption for active criminal investigative information to evaporate upon the sharing of that information with another criminal justice agency, it would have expressly provided so in the statute.
Because the shooting incident records constituted "active criminal investigative information" as defined by statute, the statutory exemption contained in section 119.07(3)(d) prevents court ordered public disclosure of that criminal investigative information regardless of which agency has possession of the file. Simply put, the transfer from one criminal agency to another does nothing to change the character of the information with respect to its exempt classification under the statutory definition of criminal investigative information. Thus, even though shared with the City of Riviera Beach Police Department, the information compiled by the City of West Palm Beach retains its exempt status until it no longer qualifies as active criminal investigative information. Therefore, whether in the possession of West Palm Beach or Riviera Beach, the requested information enjoys exempted status.
Finally, we affirm the trial court's ruling that the City of Riviera Beach must comply with the disclosure requirements of sections 119.07(2) and 119.011(3)(c) by making partial disclosure of certain non-exempt information contained in the records including, inter alia, the date, time and location of the incident.
Accordingly, we reverse in part and affirm in part.
GUNTHER, J., and BARR, ROBBIE M., Associate Judge, concur.
NOTES
[1] Neither opinion lends much support to the manual's conclusion. In AGO 89-12, the attorney general concluded that the Department of Professional Regulation is prohibited from releasing to other law enforcement agencies any information obtained during its investigations pertaining to patient records and identification. In AGO 85-62, the attorney general opined that financial statements submitted to the Department of Transportation in connection with bid requests for public construction contracts are exempt from inspection or review by the Department of Professional Regulation, Board of Accountancy for the purpose of determining compliance with accounting standards for certified public accountants. The attorney general based this conclusion on section 337.14(1), Florida Statutes which exempts certain parts of construction contract bid proposals from the disclosure requirements of section 119.07(1), Florida Statutes.
[2] "Criminal intelligence information" means information with respect to an identifiable person or group of persons collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity.
(b) "Criminal investigative information" means information with respect to an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including, but not limited to, information derived from laboratory tests, reports of investigators or informants, or any type of surveillance.
... .
(d) 1. Criminal intelligence information shall be considered "active" as long as it is related to intelligence gathering conducted with a reasonable, good faith belief that it will lead to detection of ongoing or reasonably anticipated criminal activities.
(d) 2. Criminal investigative information shall be considered "active" as long as it is related to an ongoing investigation which is continuing with a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future.
... .